**WO**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tom Horne, Arizona State Superintendent of Schools; Arizona State Department of Education, | No. CV-08-1141-PHX-MHM |
| Plaintiff, | **ORDER** |
| vs. | |
| United States Department of Education; Margaret Spellings, in her capacity as Secretary of the United States Department of Education, | |
| Defendant. | |

Currently pending before the Court is the Defendants United States Department of Education (USDE) and the Secretary of Education's Motion to Dismiss the case pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt.#9.) This is the second lawsuit that the Arizona Department of Education (ADE) has filed against the United States Department of Education in connection with test scores of limited English proficient (LEP) students in state schools pursuant to the No Child Left Behind Act (NCLB). After

reviewing the pleadings and holding oral argument, the Court issues the following Order.

## I. Statutory Background

The Elementary and Secondary Education Act (ESEA) permits states to voluntarily participate in a federal-state partnership in the area of public education. In return for federal monies, participating states must agree to comply with federal requirements that are meant to enhance the quality of elementary and secondary education and to further academic achievement. 20 U.S.C. § 6301, et. seg.

The No Child Left Behind Act amended the ESEA to "ensure that all children have a fair, equal and significant opportunity to obtain a high-quality education and reach, at a minimum, proficiency on challenging state academic achievement standards and state academic assessments." Id. As a means of holding states accountable for the federal funding they receive, NCLB requires states to make annual assessments of all public school students and to use the results of these assessments in determining whether schools and districts have made adequate yearly progress (AYP) towards the NCLB's overriding goal of academic proficiency for all students.

Title I of the ESEA, as amended by NCLB, contains several programs geared toward boosting the educational achievement of disadvantaged students. 20 U.S.C. § 6301(2). To receive a federal grant under Title I, Part A, a state must submit a plan, developed by the state educational agency, that demonstrates the following: (**1**) that the state has adopted challenging academic standards that will apply to all schools and children in the state, 20

U.S.C. § 6311(b)(1)(A)-(B); (**2**) that the state has implemented high-quality yearly academic assessments to measure students' performance in mathematics, reading or language arts, and science; and (**3**) that the state has developed a "single, statewide State accountability system" for holding local educational agencies and schools accountable for making AYP. Id. States are largely responsible for defining AYP, but the definition must "appl[y] the same high standards of academic achievement to all" public elementary and secondary school students must be based on statistically valid and reliable method of measuring student progress, and must include "separate measurable annual objectives for continuous and substantial improvement" for various groups of students, including one group comprised of all public elementary and secondary school students, as well as certain subgroups of students, including LEP students. 20 U.S.C. § 6311(b)(2)(C). For a school or district to make AYP, both the "all students" group and the LEP subgroup, along with the other subgroups of students identified in § 6311(b)(2)(C)(v), must meet the academic objectives set by the state. Id. § 6311(b)(2)(I)(i). Alternatively, if a given group does not meet its annual objective, a school or district can make AYP if the percentage of students in the group measured "below proficient" on the state assessments is at least 10 percent lower than it was in the preceding school year. Id.

In addition to directing that the academic achievement results of LEP students be included in AYP calculations, both as part of the group comprised of all students and as part of the LEP students subgroup, § 6311(b)(2)(C)(v)(I)(dd), NCLB further directs that LEP students "shall be assessed in a valid and reliable manner and provided reasonable accommodations on assessments . . . including, to the extent practicable, assessments in the

- 3 -

language and form most likely to yield accurate data on what such students know and can do in academic content areas, until such students have achieved English language proficiency." § 6311(b)(3)(C)(ix)(III); see also 34 C.F.R. § 200.6(b). LEP students must be assessed with tests written in English once they have attended school in the United States for three or more consecutive years, unless an extension of time is warranted. 20 U.S.C. § 6311(b)(3)(C)(x); see also 34 C.F.R. § 200.6(b)(2)(i).

Under NCLB, schools that fail to make AYP for certain time periods may be identified, in increasing levels of severity, for "improvement," "corrective action," or even "restructuring." 20 U.S.C. § 6316(b)(1)-(8). Before identifying the aforementioned actions, the local educational agency must provide the school with the academic assessment date on which the identification is based. § 6316(b)(2)(A). The school may then appeal the identification to the local educational agency on the ground that the proposed identification "is in error for statistical or other substantive reasons." § 6316(b)(2)(B).

## II.     Legal Standard

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990). The Ninth Circuit has stated that "[t]he issue is not whether a plaintiff's success on the merits is likely but rather whether the claimant is entitled to proceed beyond the threshold in attempting to establish his claims." De La Cruz v. Tormey, 582 F.2d 45, 48 (9th Cir. 1978). The Court

must determine whether or not it appears to a certainty under existing law that no relief can be granted under any set of facts that might be proved in support of plaintiffs' claims. Id.

Rule 12(b)(6) must be read in conjunction with Rule 8(a) which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure Section 1356 (1990). The notice pleading standard set forth in Rule 8 establishes "a powerful presumption against rejecting pleadings for failure to state a claim." Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997). Therefore, a district court does not dismiss a complaint for failure to state a claim unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also U.S. v. City of Redwood City, 640 F.2d 963, 966 (9th Cir. 1981).

### III.    Procedural and Factual History

As noted in the preceding section, because all well-plead allegations in ADE's Complaint must be taken as true for the purpose of ruling on a motion to dismiss, the Court will briefly discuss the factual allegations as recited in the Complaint. See Smith v. Jackson, 84 F.3d 1213, 1217 (9th Cir. 1996).

According to Plaintiff's recitation of the facts, in 2003, ADE engaged in negotiations with USDE representatives over the assessment of Arizona's large population of LEP students, who spoke Spanish as a first language. The negotiations were primarily concerned with the effect that an Arizona state proposition, Proposition 203—approved by the voters in 2000—might have on the states newfound obligations under NCLB. See A.R.S. §§ 15-751-757. Proposition 203 requires that all children in Arizona public schools be taught in

English and that "a standardized, nationally-normed written test of academic subject matter given in English . . . be administered at least once each year to all Arizona public schoolchildren." Id. The proposition allegedly prohibits ADE from testing LEP students in their native languages for the period of time allowable under NCLB and its companion regulations. See 20 U.S.C. § 6311(b)(3)(C)(III)

According to the Complaint, ADE and USDE representatives entered into an oral agreement that would permit Arizona schools to include their LEP student's scores as part of their AYP calculation, but any school failing to make AYP because of its LEP students' scores could appeal that classification under 20 U.S.C. § 6316(b)(2)(B). The basis for such an appeal would be that the score results of LEP students could not be a valid and reliable indicator of academic proficiency because language deficiencies, compounded by Proposition 203, would likely skew the results. Based on this alleged agreement, Arizona submitted its Consolidated State Application Accountability Workbook and agreed to participate in NCLB, thereby accepting federal educational monies.

In April 2005, a USDE monitoring team found that ADE was improperly allowing schools to use the appeals process of 20 U.S.C. § 6316(b)(2)(B) to effectively remove the assessment scores of LEP students from the determination of whether a school has made AYP. The team issued a report requiring ADE to cease this use of the appeals, and to implement testing practices that minimize language barriers for LEP students during their first three years of English instruction..

In July 2006, ADE file suit before another district court judge seeking a declaratory judgment that it had properly interpreted the appeals process under 20 U.S.C. §

- 6 -

6316(b)(2)(B) when it excluded LEP students' assessment scores from the state's AYP determinations under NCLB. In this previous case, another district court judge determined that the case lacked subject matter jurisdiction, since ADE was attempting to bring a pre-enforcement action against USDE. The Court concluded that before ADE could bring suit, it must file a proposed amendment to Arizona's state accountability plan. That amendment would include ADE's preferred interpretation of the appeals process under 20 U.S.C. § 6316(b)(2)(B). Should USDE reject the state's amended plan, the Court noted that ADE could seek judicial review of such an action under the Administrative Procedures Act, 5 U.S.C. § 701, et. seq., for it would constitute final agency action.

Following the District Court's decision, ADE amended its accountability plan, proposing that the plan allow school appeals of AYP determinations based on evidence that the school's failure to make AYP was due to the inclusion of LEP scores. On June 28, 2007, the amendment was rejected by USDE. Following that action, ADE requested an administrative hearing, citing 20 U.S.C. § 6311(e)(1)(E) and filed the instant lawsuit.

### III. Legal Analysis

The federal government Defendant argues that the Court lacks jurisdiction to hear the instant case because ADE's Complaint contains only a breach of contract claim, which is not cognizable as a matter of law. The federal government instead contends that if the state wishes to bring suit against USDE for the denial of the amendment that the state attempted to add to its plan under NCLB, it may do so only under the Administrative Procedures Act 5 U.S.C. § 701, et. seq.

According to the federal government's filings, there are two fundamental flaws in the

litigation approach taken by the State of Arizona: (1) a federal agency cannot contract with a state agency to interpret a federal statute in a particular manner; and (2) ADE has not identified an applicable waiver of the United States' sovereign immunity.

With respect to the Department of Education's ability to bargain with the State of Arizona over the interpretation of NCLB, the federal government claims that as a matter of law, no member of the Executive branch has the "requisite authority" to "offer" a particular interpretation of statute that has been passed into law. Instead, a statute's interpretation is governed by Congress' intent, as ultimately determined by a reviewing court. See Chevron, Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 n.9 (1984); Texaco, Inc. v. United States, 528 F.3d 703, 707 (9th Cir. 2008). Moreover, in exercising their final authority to determine the correct interpretation of a statute, courts are not bound by the parties' mutual agreement. See Texaco, Inc., 528 F.3d at 707 (Under the framework established in Chevron, "the first step . . . is to determine whether the [statutory] language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case," and if the meaning is plain and unambiguous, "[t]he inquiry ceases.").

With to the issue of sovereign immunity, the federal government notes that the United States is immune from suit unless it consents to be sued, and if so, "the terms of its consent . . .define that court's jurisdiction." United State v. Dalm, 494 U.S. 596, 608 (1990). One such waiver is found in the APA; however, a waiver of sovereign immunity under the APA does not apply to claims for monetary relief. See Weber v. Dep't of Veterens Affairs, 521 F.3d 1061, 1066 (9th Cir. 2008). Additionally, the Little Tucker Act, 20 U.S.C. § 1346(a)(2), established a waiver of sovereign immunity for breach of contract claims in district court, but

- 8 -

only for claims up to $10,000.  USDE contends that because the State of Arizona has not waived any claim to damages in excess fo $10,000, the sovereign immunity waiver of the Little Tucker Act does not apply.

In responding to USDE's Motion to Dismiss, the State of Arizona claims that this Court's jurisdiction for the breach of contract claim is indeed found under the Little Tucker Act, 20 U.S.C. § 1346(a)(2).  The state notes that to the extent damages in excess of $10,000 are prohibited under the statute, the state waives damages in excess of that amount. Unfortunately, with respect to the breach of contract claim. the state failed to address the substantive points made by USDE.  Instead, the state spent the remainder of its opposition brief arguing the merits of challenge to USDE's action under the Administrative Procedures Act.  Because the state's brief failed to address the allegations that an enforceable contract cannot be established under the facts of this case, that argument must be deemed waived. Wojitas v. Capital Guardian Trust Co., 477 F.3d 924, 926 (7th Cir. 2007) (recognizing that "failure to oppose an argument permits an inference of acquiescence and acquiescence operates as a waiver"). In any event, the state's claim, even if not deemed waived, still fails, because a breach of contract claim cannot be predicated upon an assertion that a federal agency has promised to interpret a statute in a certain way.

To the extent the ADE now seeks to have the Court review USDE's denial of the amendment to its state plan, the Court notes that the Complaint cannot be fairly construed as raising a challenge to agency action under the Administrative Procedures Act.  As USDE points out in its reply brief, the state could have sought nonmonetary relief under the APA by challenging the denial of its plan amendment, since this denial constitutes final agency

- 9 -

action within the meaning of 5 U.S.C. § 704. Yet, no such claim appears in the Complaint. Although the state, in its opposition brief, asks the Court to construe the Complaint to raise an APA challenge, such a procedural move on the part of the Court would expressly contradict the language of the Complaint, which states that ADE "has not been provided an opportunity to challenge [USDE's] decision without placing hundreds of millions of dollars of federal funds at risk." It would be inappropriate for the Court to now treat the state's Complaint as raising an APA challenge to the plan amendment denial, when such a claim does not affirmatively and unambiguously appear in the language of the Complaint. Furthermore, the state cannot simply amend their Complaint by making new allegations in an opposition brief. Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss."); Lerner v. Forster, 240 F. Supp. 2d 233, 241 (E.D.N.Y. 2003) ("New claim not specifically asserted in the complaint may not be considered by courts when deciding a motion to dismiss.").

As such, the Court will dismiss Plaintiff's breach of contract claim against the United States with prejudice for both lack of jurisdiction and failure to state a claim upon which relief could be granted, but the Court will permit Plaintiff to amend its Complaint to directly raise an APA challenge to the denial of the State of Arizona's state plan amendment. Despite arguments to the contrary, the Court cannot presently review the actions of USDE under the APA, since the Complaint does not clearly and unmistakably set forth such a claim. Therefore, the Court will grant Plaintiff 14 days to amend its Complaint to raise the single claim: whether the decision of the Secretary of Education to deny Arizona's plan amendment

survives the scrutiny of judicial review under the Administrative Procedures Act, 5 U.S.C. 704, et. seq.

**Accordingly**,

**IT IS HEREBY ORDERED** granting Defendants' Motion to Dismiss. (Dkt.#9.)

**IT IS FURTHER ORDERED** permitting Plaintiff to file an amended Complaint no later than 14 days from the date of this Order, raising an Administrative Procedures Act challenge to the Secretary of Education's denial of Arizona's state plan amendment under the No Child Left Behind Act and its applicable regulations.

DATED this 23rd day of March, 2009.

*[Signature]*

Mary H. Murguia
United States District Judge